FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2015 SEP -8  PM 3: 00

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

CASE NO. 6:15-CV-1461-ORL-37-DAB

TNT EQUIPMENT INC.,
an Ohio corporation

        Plaintiff,

vs.

AMERISURE MUTUAL INSURANCE
COMPANY, a Michigan corporation,
and LIBERTY SURPLUS INSURANCE
CORP., a New Hampshire corporation,

        Defendants.

_____/

## COMPLAINT FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff TNT EQUIPMENT INC. ("TNT") sues Defendants AMERISURE MUTUAL INSURANCE COMPANY (AMERISURE") and LIBERTY SURPLUS INSURANCE CORP. ("LIBERTY") for declaratory relief, and states that:

1. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 for the purpose of determining an actual controversy between the parties. TNT seeks a declaratory judgment concerning a dispute with the Defendants over coverage under AMERISURE Policy No. GL 20312250702, and LIBERTY Policy No. DGLLA119562-1.

2. TNT seeks a declaratory judgment concerning the duty of AMERISURE and LIBERTY to defend and indemnify it for the claims

asserted against TNT in the underlying liability action filed by Mario Aguiar and Maribel Aguiar ("AGUIAR"), in Osceola County Circuit Court Case No. 2013-CA-803-CN.

## THE PARTIES

3. Plaintiff, TNT, is a foreign corporation incorporated under the laws of the state of Ohio, having its principal place of business in Columbus, Ohio, and is authorized to do business in Florida.

4. Defendant, AMERISURE, is a foreign corporation incorporated under the laws of the state of Michigan, having its principal place of business in Farmington Hills, Michigan. AMERISURE is authorized to do business in, and does business in the State of Florida.

5. Defendant, LIBERTY, is a foreign corporation incorporated under the laws of the state of New Hampshire, having its principal place of business in Boston, Massachusetts. LIBERTY is authorized to do business in, and does business in the State of Florida.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC Section 1332, in that it involves parties of diverse citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

7. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 USC Section 1391, as the incident

which gives rise to the underlying liability claim occurred in Osceola County, Florida which is located in this judicial district.

## THE UNDERLYING LIABILITY CLAIM

8. AGUIAR has sued TNT and others for injuries he sustained in a construction site accident that occurred on March 23, 2012. A copy of the Amended Complaint filed by AGUIAR is attached hereto as **Exhibit A**, and will be hereinafter referred to the as the AGUIAR Lawsuit.

9. AGUIAR alleges that on March 23, 2012, he was utilizing a mast climber that collapsed, causing him to fall. As a result of this fall, Mr. Aguiar alleges he suffered bodily injury and pain, and incurred significant medical expenses.

10. The accident in question occurred at a construction site for an Embassy Suites hotel in Kissimmee, Osceola County, Florida.

11. Upon information and belief, Hardin Construction Company, LLC ("HARDIN") was the general contractor for the construction of the Embassy Suites hotel.

12. Upon information and belief, The Stowell Company ("STOWELL") was a sub-contractor for the construction of the Embassy Suites hotel.

13. The mast climber AGUIAR was using at the time of his accident had been leased by STOWELL from TNT. A copy of the lease agreement is attached hereto and incorporated herein as **Exhibit B**.

14. In Paragraph 9 of the Lease Agreement between TNT and STOWELL, STOWELL agrees to indemnify TNT and hold TNT harmless for any claims arising out of STOWELL's possession, use, maintenance, storage or control of the mast climbing equipment. Specifically, Paragraph 9 of the lease agreement states as follows:

> **Indemnification:** Customer agrees to indemnify and hold harmless TNT from and against any and all claims, costs, damages, expenses, liabilities, actions and causes of action (collective, "Claims") including, without limitation, court costs and attorney's fees relating to, arising out of, resulting from, incident to or in any way connected with, directly or indirectly, Customer's possession, use, maintenance, storage, or control of any of the Equipment or Work, or any death, injury, damage or destruction caused or allegedly caused by any of the equipment or Work and/or any actual or alleged act or failure to act of Customer or any person or entity acting through, under or on behalf of Customer, including claims resulting in part from TNT's negligence, but excluding Claims resulting from TNT's sole negligence or willful misconduct. Customer shall defend TNT against any and all Claims, unless TNT shall notify Customer in writing that TNT will defend itself, and in either case, Customer shall be liable for, pay and/or reimburse TNT for all fees, costs and expenses of such defense including without limitation, attorney's fees and any settlement costs, judgments and/or other resolutions of any claims.

15. In Paragraph 10 of the Lease Agreement between TNT and STOWELL, STOWELL agrees to maintain general liability insurance, with an insurance company acceptable to TNT, naming TNT as an additional insured. Specifically, Paragraph 10 of the lease agreement states as follows:

> **Insurance:** Customer, at its own expense shall (a) insure the Equipment with an insurance company acceptable to TNT, for retail list price, against

all risks of loss and damage, naming TNT as first mortgagee under a standard mortgage clause with all losses payable to TNT, (b) maintain general liability insurance, with an insurance company acceptable to TNT, naming TNT as an additional insured, with limits of not less than $1,000,900 for injury and death, and $500,000 for property damage, (c) provide TNT with a certificate of such insurance (and the amount of any deductible or self-insured retention) and, (d) notify TNT within 12 hours after the occurrence of any claim, loss, damage or injury relating to the Equipment or Work. Upon Customer's failure to provide such insurance and certificates, TNT may be obtained at Customer's expense and Customer shall forthwith reimburse TNT for any costs incurred by them therefore.

16.  TNT has previously tendered its defense to, and demanded indemnity for the AGUIAR claim from each of the Defendants, both of whom have rejected the tender.

## COUNT I – DECLARATORY JUDGMENT (AMERISURE)

17.  TNT realleges the allegations contained in paragraphs 1-16 above.

18.  TNT and STOWELL entered into a lease agreement which specified insurance requirements, including having TNT listed as an Additional Insured under STOWELL's general liability policy. See Exhibit B.

19.  AMERISURE issued to STOWELL, as the named insured, the following Commercial General Liability policy:  Policy No. GL 20312250702, for the policy period from 01/01/2012 to 01/01/2013.  A copy of said policy is attached hereto as **Exhibit C.**

20.  Upon information and belief, TNT is, was, should have been and/or was known to be an Additional Insured under the AMERISURE/STOWELL Policy.

21. As an Additional Insured, TNT contends that the AMERISURE/STOWELL Policy provides coverage for AGUILAR's claims against TNT, including but not limited to TNT's liability; and/or TNT's legal expenses incurred in addressing the AGUIAR claims.

22. To date, AMERISURE has failed to acknowledge and/or accept TNT as an additional insured under the AMERISURE/STOWELL Policy. As such, an actual controversy exists between AMERISURE and TNT. TNT is in doubt as to the rights, duties, and obligations owned to it under the AMERISURE /STOWELL Policy.

23. Thus, TNT is in need of, and is entitled to a judicial declaration of its rights regarding the same.

24. TNT and/or STOWELL has/have complied with all conditions precedent to the filling of this lawsuit, and notwithstanding the same, AMERISURE has denied the claims in question. Alternatively, to the extent that TNT and/or STOWELL have failed to comply with any conditions precedent, the failure to comply with the same did not prejudice and/or is immaterial as an immaterial breach of the subject contracts of insurance as such claims were or would have been denied by AMERISURE. Alternatively, AMERISURE waived any such conditions and/or are estopped form asserting any defenses related to the conditions precedent. More specifically, TNT and/or STOWELL have plainly given notice of all claims which are the subject of this lawsuit to AMERISURE and/or its designated agents.

WHEREFORE, TNT respectfully requests that this Honorable Court declare the rights of the parties as follows:

a. That this Court has jurisdiction over the subject matter;

b. That this Court has jurisdiction over the parties in this matter;

c. That the AMERISURE / STOWELL Policy was in full force and effect at all times relevant to the loss;

d. That TNT is an Additional Insured under the AMERISURE/STOWELL Policy;

e. That the AMERISURE/ STOWELL Policy provides coverage for TNT's liability;

f. That the AMERISURE/STOWELL Policy provides coverage for TNT's legal expenses incurred in the addressing the AGUIAR claims;

g. That no exclusions or other limitation of the coverage contained in the AMERISURE/STOWELL Policy are applicable to the AGUIAR claims;

h. That AMERISURE owes TNT attorney's fees and costs pursuant to the Florida Statute Sections 627.428, 57.104, 57.041 and/or 626.9373;

i. That TNT is entitled to pre-judgement interest;

j. That TNT is entitled to post judgment interest;

k. And grant all other relief as is just and proper.

## COUNT II – DECLARATORY JUDGMENT (LIBERTY)

25. TNT realleges the allegations contained in paragraphs 1-16 above.

26. TNT and STOWELL entered into a lease agreement which specified insurance requirements, including having TNT listed as an Additional Insured under STOWELL's general liability policy. See Exhibit B.

27. At all times material, STOWELL was a subcontractor of HARDIN in connection with the construction of an Embassy Suites hotel in Kissimmee, Osceola County, Florida. A copy of that subcontractor agreement is attached hereto as **Exhibit D**.

28. Upon information and belief, at all times material hereto STOWELL was an "enrolled contractor" as that term is defined in the STOWELL/HARDIN subcontractor agreement.

29. By virtue of STOWELL being an "enrolled subcontractor," it qualified as a "named insured" under the LIBERTY OCIP Policy.

30. The LIBERTY OCIP Policy contains an endorsement amending the policy's definition of who is an additional insured to include a lessor of leased equipment, when required by written contract signed ... prior to the occurrence in which coverage is sought under the policy.

31. Since STOWELL had entered into the equipment lease with TNT prior to the AGUIAR accident, and the lease agreement requires STOWELL to have TNT named as an additional insured to its general liability policy, TNT qualifies as an additional insured under the LIBERTY OCIP policy.

32. The LIBERTY OCIP policy provides coverage for AGUILAR's claims against TNT, including but not limited to TNT's liability; and/or TNT's legal expenses

incurred in addressing the AGUIAR claims.

20. To date, LIBERTY has failed to acknowledge and/or accept TNT as an additional insured under the LIBERTY OCIP Policy. As such, an actual controversy exists between LIBERTY and TNT. TNT is in doubt as to the rights, duties, and obligations owned to it under the LIBERTY OCIP Policy.

21. Thus, TNT is in need of, and is entitled to a judicial declaration of its rights regarding the same.

22. TNT has complied with all conditions precedent to the filling of this lawsuit, and notwithstanding the same, LIBERTY has denied the claims in questions. Alternatively, to the extent that TNT has failed to comply with any conditions precedent, the failure to comply with the same did not prejudice and/or is immaterial as an immaterial breach of the subject contract of insurance as such claims were or would have been denied by LIBERTY. Alternatively, LIBERTY waived any such conditions and/or is estopped form asserting any defenses related to the conditions precedent. More specifically, TNT has plainly given notice of all claims which are the subject of this lawsuit to LIBERTY and/or its designated agents.

WHEREFORE, TNT respectfully requests that this Honorable Court declare the rights of the parties as follows:

a. That this Court has jurisdiction over the subject matter;

b. That this Court has jurisdiction over the parties in this matter;

c. That the LIBERTY OCIP Policy was in full force and effect at all times relevant to the loss;

d. That TNT is an Additional Insured under the LIBERTY OCIP Policy;

e. That the LIBERTY OCIP Policy provides coverage for TNT's liability;

f. That the LIBERTY OCIP Policy provides coverage for TNT's legal expenses incurred in addressing the AGUIAR claims;

g. That no exclusions or other limitation s of the coverage contained in the LIBERTY OCIP Policy are applicable to the AGUIAR claims;

h. That LIBERTY owes attorney's fees and costs pursuant to the Florida Statute Section 627.428, 57.104, 57.041 and/or 626.9373;

i. That TNT is entitled to pre-judgement interest;

j. That TNT is entitled to post judgment interest;

k. And grant all other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues triable as of right by jury.

Date: September 2, 2015.

By: _____
JACK T. FROST
Florida Bar No. 282138
KELLEY KRONENBERG
8201 Peters Road, Ste. 4000
Plantation, FL 33324
Ph. (954) 370-9970
Fax (954) 382-1988
E-mail: jfrost@kelleykronenberg.com