UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TNT EQUIPMENT INC.,

   Plaintiff,

v.              Case No. 6:15-cv-1461-Orl-37DAB

AMERISURE MUTUAL INSURANCE
COMPANY; and LIBERTY SURPLUS
INSURANCE CORP.,

   Defendants.

**ORDER**

This cause is before the Court on the following matters:

1. Amerisure Mutual Insurance Company's Motion for Summary Judgment with Incorporated Memorandum of Law (Doc. 35), filed February 10, 2016;

2. Plaintiff TNT Equipment Inc.'s Response in Opposition to Defendant Amerisure Mutual Insurance Company's Motion for Summary Judgment and TNT's Motion for Summary Judgment on Amerisure's Duty to Defend (Doc. 40), filed March 7, 2016; and

3. Amerisure Mutual Insurance Company's Response in Opposition to TNT Equipment, Inc.'s Cross-Motion for Summary Judgment on the Issue of the Duty to Defend (Doc. 44), filed March 23, 2016.

Upon consideration, the Court concludes that summary judgment is due to be granted in favor of Amerisure Mutual Insurance Company ("**Amerisure**") and against TNT Equipment Inc. ("**TNT**").

**BACKGROUND**[1]

TNT filed this action to obtain a declaratory judgment as to the parties' rights and obligations under two insurance policies: (1) a Commercial General Liability policy ("**CGL**") issued by Amerisure; and (2) a CGL policy issued by Liberty Surplus Insurance Corporation ("**Liberty**"). (Doc. 1.) In particular, TNT maintains that the claims asserted against it in an underlying state court lawsuit are covered by each CGL policy and therefore trigger the insurers' duty to defend and indemnify TNT. The Court disagrees.

**A.     Procedural Posture and Nature of Claims**

This dispute traces back to an accident that occurred at the construction site of an Embassy Suites hotel located in Kissimmee, Florida ("**the Project**"). (Doc. 1-2.) While performing stucco work at the Project on March 23, 2012, Mario Aguiar ("**Aguiar**") fell approximately forty to fifty feet and was seriously injured when the mast climber scaffolding equipment ("**Mast Climber**"), to which he was harnessed, suddenly collapsed ("**the Accident**"). (*Id.* at 5.) At the time of the Accident, the Mast Climber was under lease from TNT to Stowell Company, Inc. ("**Stowell**")—a primary subcontractor responsible for various components of the Project, including stucco work. (*Id.*)[2] Stowell contracted the stucco work to Forum Construction Group, Inc. ("**Forum**"), which, in turn, subcontracted the work to Magic Stucco, Inc. ("**Magic Stucco**")—Aguiar's employer. Under each

---

[1] Unless noted otherwise, the facts included in this section are undisputed and have been gleaned from the parties' filings. They are recited solely for the purpose of resolving the pending motions and should not be construed as factual findings of the Court.

[2] The Lease Agreement between TNT and Stowell ("**TNT Lease**"), a copy of which is attached to the Complaint, required Stowell to indemnify TNT for any claims arising out of the use or maintenance of the Mast Climber by Stowell or any party acting on its behalf. (*See* Doc. 1-2 at 26–29.)

subcontract, Stowell ultimately remained responsible for the stucco work and provided the equipment necessary for its execution—including the Mast Climber. (Doc. 35-2.)

Following the Accident, Aguiar and his wife filed a state court personal injury lawsuit in 2013 ("**Liability Action**").[3] The complaint in the Liability Action sets forth negligence, gross negligence, and loss of consortium claims against TNT and Stowell and accuses both of concealing "safety issues associated with the mast climber," and failing to properly maintain it. (Doc. 1-2.) The Liability Action complaint also advances claims against Forum and Hardin Construction Company, LLC ("**Hardin**"). (*Id.*) Hardin was the general contractor for the Project that subcontracted stucco, metal framing, drywall, and other work to Stowell. (Doc. 1-4 ("**Stowell/Hardin Agreement**").)[4]

Contending that the claims in the Liability Action are covered by the policies, TNT tendered its defense to Amerisure and Liberty. (Doc. 1, p. 5.) Following their respective rejection of its tender, TNT filed the instant action. (Doc. 1.) In its two-count Complaint, TNT specifically requests that the Court declare that: (1) TNT is an "Additional Insured" or should be treated as one under each policy; (2) TNT's liability and expenses arising from the Liability Action are covered by each policy; and (3) the Liability Action

---

[3] The Liability Action, Case No. 2013-CA-803, remains pending in the Ninth Judicial Circuit Court in and for Osceola County, Florida.

[4] The Liability Action complaint alleges that Magic Stucco entered into a "Master Independent Contractor's Agreement" with Forum under which: (1) Stowell "was considered the General Contractor for purposes of the stucco work"; (2) Forum was designated as a subcontractor; and (3) Magic Stucco was designated as a sub-subcontractor ("**Forum Agreement**"). (Doc. 1-2, ¶¶ 15–16.)

Although the Forum Agreement was purportedly attached to the Liability Action complaint (Doc. 1-2, ¶ 15), it was not appended to TNT's Complaint. Rather, a copy of the Forum Agreement is attached to Amerisure's Motion for Summary Judgment. (Doc. 35-2.) The Forum Agreement specified that Stowell would provide to Magic Stucco "all equipment required to perform work on all elevations." (*Id.* at 2.)

3

does not fall within the limitations or exclusions of either policy. (*Id.* at 7, 10.)

TNT's and Amerisure's cross-motions for summary judgment regarding Amerisure's duty to defend (Docs. 35, 40) were preceded by Liberty's Motion to Dismiss (Doc. 12). During the pendency of these dispositive motions, Amerisure also filed a Motion to Stay Discovery (Doc. 36), which was denied by Magistrate Judge David Baker on May 13, 2016. (Doc. 50.)

On September 8, 2016, the Court heard oral argument on: (1) Amerisure's Motion for Summary Judgment; (2) TNT's Cross-Motion for Summary Judgment; (3) Liberty's Motion to Dismiss Count II of the Complaint; and (4) Amerisure's Motion to Vacate the Magistrate Judge's Order denying its Motion to Stay Discovery. (Doc. 51.) At the conclusion of the hearing, the Court issued an *ore tenus* ruling granting Liberty's Motion to Dismiss and dismissed with prejudice TNT's claim against Liberty. (*See* D.E. 58.)[5] Notwithstanding the dismissal of the claim against Liberty, some elaboration of Liberty's involvement with the Project is necessary as it relates to the Amerisure CGL coverage dispute.

**B.     Competing Summary Judgment Arguments**

As to Amerisure's alleged duty to defend, TNT first points to a provision of the TNT Lease that required Stowell to include TNT as an Additional Insured under a general liability policy. (Doc. 40, p. 7; *see also* Doc. 1, pp. 4–5; Doc. 1-2, p. 28.) By virtue of the TNT Lease, TNT surmises that it "is, was, should have been and/or was known to be" an

---

[5] The Court took the motions for summary judgment under advisement and also denied Amerisure's motion to vacate the Order denying a stay of discovery, noting the parties' agreement at the September 8 hearing that no further discovery was needed on the duty to defend issue. The Court explained that the parties would be permitted leave to request a stay of discovery regarding indemnification issues if necessary.

Additional Insured under the CGL policy that Amerisure issued to Stowell (Doc. 1-3, pp. 1–81 ("**Amerisure CGL**").) (Doc. 1, p. 5.) Because the Liability Action allegedly falls within the Amerisure CGL's scope of coverage for Additional Insureds, TNT asserts that summary judgment should be granted in its favor. (Doc. 40, p. 6.)

Conversely, Amerisure contends that TNT's purported coverage is excluded pursuant to the Amerisure CGL's Operations Included Within a Controlled Insurance Program Exclusion ("**OCIP Exclusion**"), which states:

> **The following exclusion is added to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph 2. Exclusions:**
>
> This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products completed operations hazard" if such operations were at any time included within a "controlled insurance program" for a construction project in which you are or were involved.
>
> This exclusion applies whether or not the "controlled insurance program" provides:
>
> (1) Coverage identical to that provided by this Coverage Form;
>
> (2) Limits adequate to cover all claims; or
>
> (3) Coverage that remains in effect.
>
> . . .
>
> **C.    The following is added to Section V – Definitions**
>
> "Controlled insurance program" means a construction, erection or demolition project for which the prime contractor/project manager or owner of the construction project has secured general liability insurance covering some or all of the contractors or subcontractors involved in the project, otherwise referred to as an Owner Controlled Insurance Program (O.C.I.P.) or Contractor Controlled

>    Insurance Program (C.C.I.P.).

(*See* Doc. 1-3, p. 67.)

Underscoring the undisputed fact that TNT performed no operations at the Project, Amerisure maintains that the OCIP Exclusion applies because: (1) the claims against TNT are based on bodily injury ultimately arising from Stowell's operations; and (2) Stowell's operations were covered by a "controlled insurance program"—namely, a General Liability "Wrap-Up" policy issued by Liberty to Project owner Sierra Land Group ("**Sierra OCIP**"). (Doc. 35, pp. 2, 6–7; *see also* Doc. 12-1, pp. 2–13.)[6]

TNT does not dispute Stowell's coverage under the Sierra OCIP, nor does it dispute Amerisure's assertion that the Liability Action arose from Stowell's use and control of the Mast Climber. (Doc. 35, pp. 2–9; Doc. 40, pp. 1–2.) Rather, TNT simply contends that the OCIP Exclusion does not apply to "Additional Insureds." (Doc. 40, p. 2.) In particular, TNT argues that the Amerisure CGL policy's "Separation of Insureds" provision[7] and Contractors General Liability Extension Endorsement ("**CGL Extension**")[8] distinguish TNT as an Additional Insured. (Doc. 40, pp. 3–4; *see also* Doc. 1-3, pp. 36,

---

[6] A "wrap up" policy is an insurance vehicle commonly used by owners of large scale construction projects to provide standardized and economical insurance coverage to all tiers of contractors and subcontractors. *See Guarantee Ins. Co. v. Old Republic Gen. Ins. Corp.*, No. 12-20189-civ, 2012 WL 4468352, at *1 (S.D. Fla. Sept. 26, 2012); *see also* Patrick J. O'Connor, *2009 Insurance Law Survey*, 4 AM. COLL. OF CONSTR. LAWYERS J. 39, 156 (2010).

[7] The Separation of Insureds provision states that "this insurance applies: (a.) As if each Named Insured were the only Named Insured; and (b.) Separately to each insured against whom claim is made or 'suit' is brought." (Doc. 1-3, p. 36.)

[8] The CGL Extension contains the following pertinent language: "**Broaden[ing] Who Is An Insured** . . . Each of the following is also an insured: . . . (I) Any person or organization who is the lessor of equipment leased to *you* to whom *you* are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of the maintenance, operation or use by *you* of such equipment." (Doc. 1-3, pp. 59–60) (emphasis added).

6

59–60.) Reasoning that the OCIP Exclusion applies only to the *Named* Insured (*i.e.*, Stowell), TNT concludes that its coverage under the Amerisure CGL endures. (Doc. 40, p. 6.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

The same standard applies where, as here, the parties submit competing motions for summary judgment, and "the denial of one does not require the grant of another." *See Perez-Santiago v. Volusia Cty.*, No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, at *2 (M.D. Fla. Mar. 11, 2010).

7

**DISCUSSION**

To prevail on its declaratory judgment claims under Florida law,[9] TNT must establish that a loss or exposure—such as the Accident and resulting Liability Action—is covered by the policy issued by Amerisure.[10] *See State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1247–78 (Fla. 1986). If TNT establishes the existence of a covered loss, then Amerisure must comply with its duties to defend and indemnify TNT in accordance with the terms of the Amerisure CGL. *Id.*; *see also Kropilak v. 21st Century Ins. Co.*, 806 F.3d 1062, 1067 (11th Cir. 2015).

The broad duty to defend is triggered if "the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage." *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995); *see also Trizec Props., Inc. v. Biltmore Constr. Co.*, 767 F.2d 810, 811–12 (11th Cir. 1985) (noting that "the duty to defend is triggered" by factual allegations that create "potential coverage under the policy"). Because the duty to defend is broad, insurers must provide a defense even when: (1) the facts alleged in the complaint fall partially within and partially outside the scope of coverage; and (2) doubts exist as to whether the complaint triggers the duty to defend.

---

[9] The parties agree that Florida law applies, as the Amerisure CGL was delivered and executed in this State. Accordingly, the Court looks "first for case precedent from the Florida Supreme Court." *Composite Structures, Inc. v. Cont'l Ins. Co.*, 560 F. App'x 861, 864 (11th Cir. 2014) (internal quotations omitted). Absent such precedent, the Court adheres "to decisions of [Florida's] intermediate appellate courts" unless a persuasive indication exists that the Florida Supreme Court "would decide the issue otherwise." *Id.* In insurance disputes like this one, the Court may "consider the case law of other jurisdictions that have examined similar policy provisions" if there are no "precedents from Florida's intermediate appellate courts" or the Florida Supreme Court. *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005).

[10] A declaratory judgment action is considered "a valuable procedure for the resolution of insurance coverage disputes." *See Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10–15 (Fla. 2004).

*See Trailer Bridge, Inc. v. Ill. Nat'l Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011); *see also Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 601 F.3d 1143, 1149 (11th Cir. 2010).

Evidence of actual loss is irrelevant to the duty to defend. *See Jones v. Fla. Inc. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005). Rather, such evidence pertains to the narrower duty to indemnify. *See WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009). However, where a duty to defend does not arise, a duty to indemnify cannot exist. *Id.*; *see also Trailer Bridge*, 657 F.3d 1135 at 1146.

To determine the scope of coverage provided by an insurance policy, courts read the policy "in its context and as a whole" and give effect to its plain meaning. *Swire Pac. Holdings Inc. v. Zurich Ins. Co.*, 845 So. 2d 161,165 (Fla. 2003); *see also Westport Ins. Corp. v. VN Hotel Grp.,* 513 F. App'x 927, 930 (11th Cir. 2014) (explaining that the scope and extent of coverage is determined by the policy language the parties bargained for).

Generally, unless the language in an insurance policy is "susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage," no ambiguity exists. *Westport Ins. Corp.,* 513 F. App'x 927, at 931. If ambiguity does exist despite resort to the ordinary rules of construction, then the policy is ordinarily construed in favor of coverage and against the insurer. *See Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005); *see also Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1085–86 (Fla. 2005) (stating that "ambiguous exclusionary clauses are construed even more strictly against the insurer than coverage clauses").

Here, TNT asserts that the terms "you" and "your" in the OCIP Exclusion refer only to Stowell as the Named Insured under the Amerisure CGL. (Doc. 40, p. 6.) TNT then

9

turns to the "Separation of Insureds" provision and the CGL Extension Endorsement to underscore TNT's status as an Additional Insured and the parties' alleged intention to remove Additional Insureds from the scope of the OCIP Exclusion. (Doc. 1-3, pp. 36, 59–60.)

TNT's suggested interpretation of the foregoing provisions not only strains credulity but ignores admittedly unambiguous language of the Amerisure CGL. Moreover, TNT's status as an Additional Insured as opposed to a Named Insured is a distinction without a difference with respect to the breadth and application of the OCIP Exclusion.

First, the Separation of Insureds provision merely clarifies that the policy applies separately to "each insured." It does not identify TNT or any other party as an Additional Insured and does not distinguish the rights of any insureds regarding coverage of a personal injury claim arising out of Project operations. More pointedly, there is nothing in the Separation of Insureds provision which limits or impacts the scope of any exclusion, much less the OCIP Exclusion. Indeed, TNT offers no explanation or credible argument to the contrary.

The CGL Extension also has no apparent bearing on the OCIP Exclusion. Rather, it extends the Amerisure CGL coverage to equipment lessors like TNT "but only with respect to their liability arising out of the maintenance, operation or use by you [that is, Stowell] of such equipment." (Doc. 1-3, p. 60.) It is both unreasonable and ironic for TNT to simultaneously rely on the CGL Extension to obtain coverage of claims arising from Stowell's operations and attempt to escape the OCIP Exclusion on the ground that it applies only to Stowell's operations. Furthermore, TNT's interpretation of the CGL Extension and OCIP Exclusion would have Amerisure cover claims arising from the

operations of Stowell's subcontractors and exclude claims arising from the operations of Stowell itself. TNT offers no legal authority or factual basis to disregard this apparent absurdity in determining the duty to defend.

Even if the Court adopted TNT's construction of the foregoing terms and provisions, the claims against TNT would nevertheless come within the scope of the OCIP Exclusion because it expressly extends beyond the Named Insured. Specifically, the exclusion pertains to Stowell's "ongoing operations *or* operations included within the 'products-completed operations hazard'" that were at any time "included within a 'controlled insurance program.'" (Doc. 1-3, p. 67) (emphasis added). Furthermore, the OCIP Exclusion plainly states that it "applies regardless of whether such operations are or were conducted by [Stowell] or on [Stowell's] behalf." (*Id.*) This provides a very clear intention to extend the OCIP Exclusion beyond Stowell to other parties otherwise covered by the Amerisure CGL—irrespective of whether a controlled insurance program supplied adequate coverage or coverage identical to that of the Amerisure CGL. (*Id.*)

Again, it is beyond dispute that the entire Project was covered by the Sierra OCIP—a "Wrap-Up" owner controlled insurance program issued by Liberty. It is also clear that TNT seeks coverage of claims ultimately arising out of Stowell's operations, or at least operations performed on its behalf. Indeed, TNT does not dispute that point. Therefore, lending plain meaning to the straight-forward language of the policy, the Court concludes that the OCIP Exclusion bars coverage to TNT and extinguishes Amerisure's duty to defend. Such a conclusion is consistent with Florida jurisprudence enforcing clear exclusionary language to effectuate the contracting parties' intentions. *See, e.g., Travelers Commercial Ins. Co. v. Harrington*, 154 So. 3d 1106, 1111 (Fla. 2014) (stating

that unambiguous policy exclusions in an insurance policy are applied as written); *Perrine Food Retailers v. Odyssey Re (London) Ltd.*, 721 So. 2d 402, 404 (Fla. 3d DCA 1998) (stating that when the plain language of an exclusion applies, an insurer has no coverage obligation to an insured).

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Amerisure Mutual Insurance Company's Motion for Summary Judgment (Doc. 35) is **GRANTED**.

2. TNT's Motion for Summary Judgment on Amerisure's Duty to Defend (Doc. 40) is **DENIED**.

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Amerisure Mutual Insurance Company and against Plaintiff TNT Equipment Inc., terminate all pending motions, and **CLOSE** the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on September 21, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record